**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                        )
ELIZABETH WHITT,                        )
                                        )
              Plaintiff,                )
v.                                      )
                                        )
MORTGAGE ELECTRONIC REGISTRATION        )      Civil Action No. 12-11524-DJC
SYSTEMS, INC., FIRST MAGNUS             )
FINANCIAL CORP., WELLS FARGO BANK,      )
N.A., and FEDERAL HOME LOAN             )
MORTGAGE CORP.,                         )
                                        )
              Defendants.               )
_____)
```

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION**
**TO DISMISS AND PLAINTIFF'S MOTION TO REMAND**
[Docket Nos. 8, 10]

July 29, 2013

Boal, M.J.

Plaintiff Elizabeth Whitt ("Ms. Whitt") brings this action against Defendants Mortgage Electronic Registration Systems, Inc. ("MERS"), First Magnus Financial Corp. ("First Magnus"), Wells Fargo Bank, N.A. ("Wells Fargo"), and Federal Home Loan Mortgage Corp. ("FHLMC"), challenging the foreclosure of her mortgage and the sale of her property located in Brockton, Massachusetts.

MERS, Wells Fargo, and FHLMC (collectively "Defendants")[1] have filed a motion to dismiss Ms. Whitt's First Amendment Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Docket No. 8.  Ms. Whitt has filed a motion to remand this action to state court. Docket No. 10.  For the

---

[1]  As discussed in more detail below, First Magnus is currently in bankruptcy.  It did not join this motion or otherwise participate in this case.

following reasons, the undersigned recommends[2] that the District Court DENY Ms. Whitt's

motion to remand and GRANT Defendants' motion to dismiss.

## I.    FACTUAL BACKGROUND[3]

On December 29, 2006, Ms. Whitt's ex-husband, Ricky Whitt ("Mr. Whitt") signed a

thirty-year note to First Magnus and a mortgage to MERS, as nominee of First Magnus, and its

successors and assigns, in the amount of $164,000.00.  Compl. ¶ 6.[4]  Ms. Whitt and Mr. Whitt

were both named as borrowers on the mortgage.  Compl. ¶ 6.  First Magnus filed for bankruptcy

on or about August 16, 2007.  Compl. ¶ 8.[5]

The Whitts' mortgage loan eventually fell into default.  See Docket No. 28.[6]  By written

notice mailed in March 2010, Wells Fargo informed Mr. Whitt of the existence of the Home

Affordable Mortgage Program ("HAMP").  Compl. at ¶ 10.  Ms. Whitt was aware of the program

and attempted to contact Wells Fargo to discuss her HAMP options.  Id. at ¶ 11.  Wells Fargo

also sent the Whitts a notice of right to cure, dated August 16, 2010.  Docket No. 28.[7]

---

[2]  On April 2, 2013, the District Court judge assigned to this case referred both motions to the undersigned for a report and recommendation.  Docket No. 21.

[3]  For purposes of the present motion to dismiss, the Court takes as true all well-pleaded allegations and draws all reasonable inferences in Ms. Whitt's favor.  See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

[4]  "Compl. _" refers to Ms. Whitt's First Amended Complaint.  Docket No. 6 at 22-32.

[5]  The bankruptcy court docket indicates that First Magnus filed a voluntary petition for Chapter 11 bankruptcy on August 21, 2007, and the case remains active.  In re First Magnus Financial Corporation, No. 07-bk-101578 (Bankr. D. Ariz. 2007).

[6]  As discussed infra, the Court will consider the documents the parties attached to their briefs.

[7]  The copy originally provided to the Court was incomplete.  Docket No. 16 at 2-3.  Upon request, Ms. Whitt submitted a complete version of the document.  Docket No. 28.

On January 28, 2011, Mr. and Ms. Whitt entered into a separation agreement.  Docket No. 13.  The agreement stated in pertinent part that Ms. Whitt shall be solely responsible for costs associated with the property, "including the mortgage on this property" and "any and all mortgage arrears."  Id. at ¶ 5(d)(2).

On or about June 18, 2011, MERS assigned Mr. and Ms. Whitt's mortgage to Wells Fargo.  Compl. ¶ 13; Docket No. 15.  The assignment did not state that the note was assigned.  Compl. ¶ 13.  On or about June 15, 2011, Wells Fargo sought authority to foreclose on the property in Massachusetts Land Court.  Id. at ¶ 14.; see also Docket No. 16 at 1.  Ms. Whitt attempted to communicate with Wells Fargo regarding her mortgage payments and the opportunity to work out a loan modification or forbearance agreement.  Compl. ¶ 15.  Wells Fargo representatives advised Ms. Whitt that they could speak only to Mr. Whitt regarding the loan or any loss mitigation options.  Id. at ¶ 16.

On November 16, 2011, Mr. Whitt conveyed his interest in the property to Ms. Whitt via quitclaim deed.  Docket No. 14.  On or about November 23, 2011, Wells Fargo conducted a foreclosure auction on the property as the alleged assignee of First Magnus and agent of FHLMC.  Compl. ¶ 23.  Wells Fargo purchased the property at the auction for $80,000.00 and assigned its bid to FHLMC by foreclosure deed recorded in the Suffolk Registry of Deeds on February 13, 2012.  Id.; Def. Ex. D.  In or about March 2012, FHLMC filed a summary process complaint in state housing court seeking to evict Ms. Whitt.  Compl. at p. 1.

## II.     **PROCEDURAL BACKGROUND**

On June 5, 2012, Ms. Whitt initiated this action in state court.  State Court record at 3.[8]
On July 10, 2012, Ms. Whitt filed a motion for a preliminary injunction and the amended
complaint.  State Court Record at 22-32; 38-39.  Defendants removed the action to this Court on
August 17, 2012 on the basis of diversity jurisdiction.  Docket No. 1.

Defendants filed the present motion to dismiss Whitt's First Amended Complaint on
August 30, 2012.  Docket No. 8.  On September 13, 2012, Ms. Whitt filed an opposition to
Defendants' motion to dismiss and filed a motion to remand the case to state court.  Docket Nos.
10, 11.  Defendants filed their opposition to Ms. Whitt's motion to remand on September 27,
2012.  Docket No. 20.  On July 12, 2013, Defendants submitted a notice of supplemental
authorities.  Docket No. 23.  This Court heard oral argument on both motions on July 15, 2013.
Docket No. 25.  With permission of the Court, Ms. Whitt thereafter filed supplemental briefing
on issues raised at oral argument.  Docket No. 27.

## III.    **MS. WHITT'S MOTION TO REMAND**

Ms. Whitt has moved to remand this case to state court.  Although she concedes that the
District Court has subject matter jurisdiction over this case on the basis of diversity jurisdiction,
she contends that removal was improper because Defendants did not comply with the "rule of
unanimity" pursuant to 28 U.S.C. § 1446.  Pl. Mot. Rem. at 2.[9]  Specifically, she argues that First
Magnus did not consent to removal.  Id.  In opposition, Defendants argue that First Magnus'
consent was not required because: (1) FHLMC may remove cases to federal court unilaterally

---

[8] The State Court record is filed as Docket No. 6.  The Court cites to documents within
the State Court record according to the docket page numbers.

[9] "Pl. Mot. Rem. _" refers to Ms. Whitt's Motion to Remand to State Court.  Docket No.
10.

pursuant to 12 U.S.C. § 1452(f); (2) First Magnus is a debtor in a pending bankruptcy action; and (3) First Magnus is a nominal and/or fraudulently joined party.  Def. Opp. at 1-2; Docket No. 24 at 2.[10]

In general, "[i]n cases involving multiple defendants, all defendants who have been served must join or assent in the removal petition.  This 'rule of unanimity' requires that all defendants file their notice of removal or consent to removal within thirty days of being served." Murphy v. Newell Operating Co., 245 F. Supp. 2d 316, 318 (D. Mass. 2003) (internal citations omitted); see also Abdullah v. Am. Products Co., Inc., 661 F. Supp. 2d 84, 86 (D. Mass. 2009).

However, FHLMC may remove any civil case in which it is a party at any time prior to trial.  12 U.S.C. § 1452(f)(3).  Indeed, because FHMLC is deemed an agency of the United States under Section 1452(f) and such agencies may remove without the consent of the other defendants, FHMLC may remove a case to federal court unilaterally.  Huntingdon Valley Club Condo. Ass'n v. Pennsylvania Hous. Fin. Agency, No. 04-4770, 2005 WL 44524, *2  (E.D. Pa. Jan. 10, 2005).

In addition, the filing of a bankruptcy petition operates as an automatic stay of actions against the debtor.  See 11 U.S.C. § 362(a)(1).  The automatic stay remains in effect unless and until a federal court either disposes of the underlying case, 11 U.S.C. § 362(c)(2), or grants relief to a particular creditor, 11 U.S.C. § 362(d)-(f).  In re Jamo, 283 F.3d 392, 398 (1st Cir. 2002).  In light of the automatic stay, where a non-consenting defendant is in bankruptcy, courts have found that an exception should be made to the rule of unanimity.  PNC Equip. Fin., LLC v. USA Wheel Tech., Inc., No. 1:11CV199, 2012 WL 441172, *1 (S.D. Ohio Feb. 10, 2012) (citing

[10] "Def. Opp. _" refers to Defendants' Opposition to Plaintiff's Motion to Remand. Docket No. 20.

cases); see also Chowdhury v. Aegis Mortg. Corp., No. 2:09-cv-11221, 2009 WL 3270090, *2

(E.D. Mich. Oct. 9, 2009).

      Courts have also found an exception to the "rule of unanimity" where a particular

defendant is a nominal party. Bailen v. Deitrick, 84 F.2d 375 (1st Cir. 1936); see also Karpowicz

v. Blue Cross & Blue Shield of Massachusetts, Inc., No. 96-10050-MLW, 1996 WL 528372, *3

(D. Mass. Aug. 19, 1996).  A defendant is nominal if there is no reasonable basis for predicting

that it will be held liable.  Acosta Oliveras v. Pittsburgh Corning Corp. et al., 36 F. Supp. 443,

444 (D.P.R. 1999).

      Finally, "[a] successful assertion of fraudulent joinder also overcomes the requirement of

unanimity, in that a federal court may ignore a lack of consent for removal from a fraudulently-

joined defendant and permit the removal of the case."  In re Neurontin Mktg., Sales Practices &

Products Liab. Litig., No. 06-11442-PBS, 2006 WL 6553001, *2 n. 2 (D. Mass. Dec. 22, 2006).

To show fraudulent joinder, a removing defendant must establish that a plaintiff either (1) has

committed fraud or (2) cannot establish the possibility of a cause of action against the joined

party.  In re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp. 2d 109, 118 (D. Mass.

2006).

      Here, FHLMC removed this action to federal court prior to trial and, thus, neither First

Magnus' consent, nor any other party's consent, was required.  In any event, Ms. Whitt alleges

that she served First Magnus on July 23, 2012.  Pl. Mot. Rem. at 2.  First Magnus filed for

bankruptcy in August 2007.  Compl. ¶ 8; Def. Opp. at 4; see also In re First Magnus Financial

Corporation, No. 07-bk-101578 (Bankr. D. Ariz. 2007).  Defendants represent, and Ms. Whitt

does not dispute, that she did not obtain relief from the automatic stay to bring suit against First

Magnus.  There is also no indication that the bankruptcy matter concluded prior to Ms. Whitt's

alleged service of First Magnus.  Moreover, although Ms. Whitt's complaint lists First Magnus

as a defendant and asserts claims against it, her complaint does state any facts in support of any

potential liability on the part of First Magnus.  Thus, Ms. Whitt has not established a cause of

action against First Magnus and there is no reasonable basis for predicting that First Magnus

would be held liable in this case.  For all these reasons, First Magnus' consent to removal was

not necessary.

Accordingly, this Court recommends that Ms. Whitt's motion to remand be denied.

**IV.    DEFENDANTS' MOTION TO DISMISS**

Ms. Whitt's complaint charges Defendants with breach of the covenant of good faith and

fair dealing (Count I), unjust enrichment (Count II), negligence (Count III), wrongful foreclosure

(Counts IV and V), and unfair and deceptive business practices under M.G.L. ch. 93A (Count

VI).  Taken together, Ms. Whitt's claims rely on two underlying theories: (1) that Wells Fargo

unlawfully failed to consider and evaluate her for a loan modification or other relief under

HAMP, and (2) that Wells Fargo's foreclosure was unlawful.  Defendants move to dismiss Ms.

Whitt's complaint for failure to state a claim.  In the alternative, they move to dismiss MERS as

a party to this action.

A.    Scope of the Record

The parties both attach documents to the pleadings and briefs.  In considering the merits

of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents

attached as exhibits or incorporated by reference in the complaint and matters of which judicial

notice can be taken.  Nollet v. Justices of the Trial Court of Mass., 83 F.Supp.2d 204, 208 (D.

Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).  Courts have made narrow exceptions for

documents the authenticity of which are not disputed by the parties, for official public records,

for documents central to a plaintiff's claim or for documents sufficiently referred to in the complaint.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Consideration of other materials is generally forbidden unless the motion is properly converted into one for summary judgment.  Id.

Defendants attach[11] the following documents to their motion to dismiss: (1) the December 29, 2006 note signed by Mr. Whitt (Def. Ex. A); (2) the mortgage signed by Mr. and Ms. Whitt on December 29, 2006 (Def. Ex. B); (3) the Assignment of Mortgage by which MERS assigned its interest in the Whitts' mortgage to Wells Fargo (Def. Ex. C); and (4) the Massachusetts Foreclosure Deed by Corporation by which Wells Fargo conveyed the foreclosed property to FHLMC (Def. Ex. D).

In addition to providing some of the same documents as the Defendants,[12] Ms. Whitt attaches: (1) the January 28, 2011 Separation Agreement between Mr. and Ms. Whitt (Docket No. 13); (2) the Quitclaim Deed whereby Mr. Whitt conveyed his interest in the property to Ms. Whitt, recorded November 16, 2011 (Docket No. 14); (3) Wells Fargo's Mortgagee's Affidavit dated June 15, 2011 and filed with the Massachusetts Land Court (Docket No. 16 at 1); and (4) the notice of right to cure dated August 16, 2010 and mailed to Mr. and Ms. Whitt by Wells Fargo (Docket No. 28).

At oral argument, the parties stipulated to the authenticity of the attached exhibits and raised no objection to the Court's authority to consider them.  In addition, most of the documents are either public records (Docket Nos. 13, 14, 16 at 1) or are referenced sufficiently in the

---

[11] Defendants' exhibits are attached to their Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's First Amended Complaint.  Docket No. 9.

[12] Ms. Whitt also attached the Mortgage and the Assignment of Mortgage.

complaint (Def. Exs. A, B, C, D).  Accordingly, the Court finds that it may consider all of the documents.

      B.    <u>Standard of Review</u>

     "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>

     Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  <u>Langadinos v. American Airlines, Inc.</u>, 199 F.3d 68, 69 (1st Cir. 2000).  While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions.  <u>Iqbal</u>, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>; <u>see also</u> <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted).  Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. <u>Iqbal</u>, 556 U.S. at 679.

      C.    <u>Overview of HAMP</u>

     In <u>Young v. Wells Fargo Bank, N.A.</u>, the First Circuit outlined HAMP.  717 F.3d 224

(1st Cir. 2013). The Court noted:

> HAMP urges banks and loan servicers to offer loan modifications to eligible borrowers with the goal of "reducing [their] mortgage payments to sustainable levels, without discharging any of the underlying debt." <u>Bosque v. Wells Fargo Bank, N.A.</u>, 762 F.Supp.2d 342, 347 (D. Mass. 2011); <u>see generally</u> Jean Braucher, *Humpty Dumpty and the Foreclosure Crisis: Lessons from the Lackluster First Year of the Home Affordable Modification Program*, 52 Ariz. L. Rev. 727, 748–53 (2010) (providing background on HAMP's features). The Secretary [of the U.S. Treasury], through Fannie Mae, entered into agreements with numerous home loan servicers, including Wells Fargo, pursuant to which the servicers "agreed to identify homeowners who were in default or would likely soon be in default on their mortgage payments, and to modify the loans of those eligible under the program." <u>Wigod v. Wells Fargo Bank, N.A.</u>, 673 F.3d 547, 556 (7th Cir. 2012). The servicers are to conduct an initial evaluation of a particular homeowner's eligibility for a loan modification using a set of guidelines promulgated by the Treasury Department. <u>Id.</u> If the borrower meets those criteria, "the guidelines direct the servicer to offer that individual a Trial Period Plan ('TPP')" as a precursor to obtaining a permanent modification. <u>Markle v. HSBC Mortg. Corp. (USA)</u>, 844 F.Supp.2d 172, 177 (D. Mass. 2011). If the borrower complies with the TPP's terms, including making required monthly payments, providing the necessary supporting documentation, and maintaining eligibility, the guidelines state that the servicer should offer the borrower a permanent loan modification. <u>See</u> <u>Wigod</u>, 673 F.3d at 557; <u>see also</u> <u>Markle</u>, 844 F.Supp.2d at 177 ("The standard-form TPP represents to borrowers that they will obtain a permanent modification at the end of the trial period if they comply with the terms of the agreement."). Loan servicers receive a $1,000 payment for each permanent modification, in addition to other incentives. <u>Wigod</u>, 673 F.3d at 556.

<u>Id.</u> at 228-30.

D.    <u>HAMP-Related Claims</u>

As an initial matter, Defendants move to dismiss Counts I, II, III, and VI on grounds that

Ms. Whitt was not entitled to HAMP relief because she was not a signatory on the promissory

note. Def. Mem. at 7.[13] Ms. Whitt responds that she was entitled to a HAMP evaluation because

---

[13] "Def. Mem _" refers to Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's First Amended Complaint. Docket No. 9.

she was named as a borrower on the mortgage and because she held legal interest in the property

at the time of foreclosure.  Pl. Opp. at 5.[14]

It is unclear whether Wells Fargo was under any obligation to offer HAMP relief to Ms.

Whitt.  The relevant HAMP guidelines provide in pertinent part that:

> To ensure that a borrower currently at risk of foreclosure has the opportunity to
> apply for HAMP, servicers should not proceed with a foreclosure sale until the
> borrower has been evaluated for the program and, if eligible, an offer to
> participate in HAMP has been made.

U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines, § VII,

610.04.04.  The Fannie Mae Servicing Guide provides that "a mortgage loan" is eligible for

HAMP.  See Fannie Mae Single Family 2011 Servicing Guide, Pt. VII, § 609.  It does not

specify whether an individual is eligible for HAMP relief only if he/she is the signatory to both

the note and the mortgage.

Defendants contend that because Ms. Whitt "was not a party to the debt contract, she

could not possibly have been in a position to apply for or agree to a modification of that

contract."  Def. Mem. at 7.[15]  Defendants further point to Ms. Whitt's own complaint, which

indicates that Wells Fargo sent a letter to Mr. Whitt informing him about HAMP.  Compl. ¶ 10.

Defendants do not, however, provide any authority to support their position.

At oral argument, Ms. Whitt explained that her construction of the term "borrower" under

HAMP is consistent with the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692

---

[14] "Pl. Opp. _" refers to Ms. Whitt's Memorandum of Law in Opposition to Defendants'
Motion to Dismiss.  Docket No. 12.

[15] Ms. Whitt contends that the separation agreement granted her all interest in the
property and delegated to her the responsibility for all property costs, including the mortgage and
any arrears.  While the agreement makes no express mention of the promissory note, it appears
that Mr. and Ms. Whitt may have intended to substitute Ms. Whitt as the obligor on the note.
However, Ms. Whitt has not pled that she was actually substituted for Mr. Whitt on the note.

_et seq._  In support, she referred to Sections 803 and 805 of the FDCPA.  Docket No. 27, Ex. A.

Those sections, however, simply define the terms "consumer" and "debt" for purposes of the

FDCPA and outline circumstances under which a debt collector is not permitted to contact a

debtor or his/her spouse.  See id.  Ms. Whitt also refers to the HAMP Supplemental Directive 09-

07, _Home Affordable Modification Program – Streamlined Borrower Evaluation Program._

Docket No. 27, Ex B.  The specific cited provision states that "all parties who signed the original

loan documents or their duly authorized representative(s) should sign the HAMP documents."

Id. at 6.  This language does not resolve the issue either.

      The Court, however, need not decide which interpretation is correct.  For the reasons

stated below, Ms. Whitt's HAMP-based claims fail for other reasons.

          1.    *Covenant of Good Faith and Fair Dealing*

      Ms. Whitt contends in Count I that "the contract between Ms. Whitt and the Defendants

included a duty of good faith and fair dealing" and that Defendants breached that duty "when it

[sic] failed to live up to the promised terms of the contract, the proposed modifications entered

into with [Ms. Whitt] and the terms of the applicable mortgage regarding conditions precedent to

foreclosure."  Compl. ¶¶ 30, 31.  Defendants move to dismiss this claim on grounds that there is

no contractual or common law duty to modify a loan and that HAMP provides no private right of

action.  Def. Mem. 8-10.

      Under Massachusetts law, "[e]very contract implies good faith and fair dealing between

the parties to it.  The covenant of good faith and fair dealing requires that neither party shall do

anything that will have the effect of destroying or injuring the right of the other party to its fruits

of the contract."  T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 569–70 (2010)

(quoting Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991)).  In order to

prevail, the plaintiff must "present [ ] evidence of bad faith or an absence of good faith." Young, 717 F.3d at 238 (citations omitted).

The "scope of the covenant is only as broad as the contract that governs the particular relationship." Winter v. Chase Bank, No. 12-10109-DJC, 2013 WL 980607, *5 (D. Mass. Mar. 12, 2013) (citation omitted). "The covenant only 'governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached.'" Id. (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005)).

Ms. Whitt contends that Defendants violated the covenant as it pertains to the mortgage and the note.[16] Defendants, however, had no obligation under either instrument to modify the loan. Ms. Whitt is unable to hold Defendants liable for violating HAMP requirements that were beyond the scope of those instruments.[17] See Speleos v. BAC Home Loans Servicing, L.P., 755 F. Supp. 2d 304, 312 (D. Mass. 2010) (dismissing claim for breach of covenant of good faith and fair dealing premised on violation of HAMP guidelines).[18]

---

[16] At oral argument, Ms. Whitt also argued that she was a third-party beneficiary of the contract between Defendants and the federal government under HAMP (the "Mortgage Selling and Servicing Contract" or "MSSC"). However, courts in this District have consistently held that homeowners are not intended beneficiaries of the MSSC. Markle, 844 F. Supp. 2d at 182 (D. Mass. 2011). Thus, she does not state a breach of covenant claim arising out of the MSSC.

[17] In determining whether a defendant breached the covenant, the core question is whether the alleged conduct was motivated by a desire to gain an unfair advantage, or otherwise had the effect of injuring the other party's rights to the fruits of the contract. Young, 717 F.3d at 237-38 (citing cases). Here, Ms. Whitt's complaint fails to allege any facts sufficient to infer that Defendants acted with a motivation to gain an unfair advantage or otherwise deprived her of her rights under the mortgage. Ms. Whitt alleges only that Wells Fargo refused to evaluate her for HAMP because it believed that Mr. Whitt was the sole obligor on the promissory note and that it owed HAMP duties only to obligors. Compl. ¶ 16. Even if Wells Fargo was mistaken in either or both of these assumptions, Ms. Whitt has not plead sufficiently that Wells Fargo ignored her requests for a HAMP evaluation and pursued foreclosure in bad faith or in the absence of good faith.

[18] Although some HAMP-based claims for breach of the covenant of good faith and fair dealing have survived motions to dismiss in this District, such claims are often based on

Accordingly, this Court recommends that Count I be dismissed against the Defendants.

        2.     *Unjust Enrichment*

Count II of the complaint alleges that the Defendants were unjustly enriched as a result of their failure to adhere to conditions precedent to foreclosure and by failing to negotiate in good faith.  Compl. ¶ 34.  Defendants move to dismiss this claim on the same grounds argued with respect to Count I above.  Def. Mem. 8-10.

To state a claim, there must be "unjust enrichment of one party and unjust detriment to another party."  Mass. Eye and Ear, 552 F.3d at 57.  A claim of unjust enrichment, however, is "not available to a party with an adequate remedy at law."  Ben Elfman & Son, Inc. v. Criterion Mills, Inc., 774 F.Supp. 683, 687 (D. Mass. 1991).  Where a contract governs the parties' relationship, the contract provides the measure of the plaintiff's rights and no action for unjust enrichment lies.  See Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 162 (1st Cir. 2005); In re Lupron Mktg. & Sales Practices Litig., 295 F. Supp. 2d 148, 182 (D. Mass. 2003).

Here, Ms. Whitt alleges that she was listed as a borrower under the mortgage and that she assumed the obligations under the note.  Compl. ¶ 6; Pl. Ex. B; Pl. Opp. at 5.  As such, her potential recourse against Defendants arises from the terms of those contracts, which provide an adequate remedy at law.  Accordingly, this Court recommends that Count II be dismissed as to Defendants.

        3.     *Negligence*

In Count III, Ms. Whitt claims that Defendants negligently serviced the loan in breach of their duty to maintain proper and accurate loan records and negligently failed to communicate

---

allegations that the loan servicer had proceeded with foreclosure despite a pending HAMP evaluation and/or application.  See Orozco v. GMAC Mortgage, LLC, No. 11-11135-FDS, 2012 WL 4581092, *6 (D. Mass. Oct. 1, 2012) (citing cases).  Such facts are not pled here.

with Ms. Whitt as a borrower under the mortgage.  Compl. ¶¶ 36, 39.  She bases this claim in

part on HAMP.  Pl. Opp. at 6.  Specifically, Ms. Whitt contends that a claim for negligence

based on a statutory or regulatory violation can survive even where there is no private cause of

action under the statute or regulation.  Id.  Defendants move to dismiss this claim on grounds that

HAMP confers no private right of action.  Def. Mem. at 10.

To state a claim for negligence in Massachusetts, a plaintiff must show: (1) a legal duty

owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4)

actual damage or injury.  Jorgensen v. Massachusetts Port Auth., 905 F.2d 515, 522 (1st Cir.

1990).

A statutory or regulatory violation does not constitute negligence per se but can supply

evidence of negligence.  See Berish v. Bornstein, 437 Mass. 252, 273 (2002).  In Speleos, the

case on which Ms. Whitt relies, the court found that the HAMP guidelines may establish a duty

of care, the breach of which may state a negligence claim.  Speleos, 755 F. Supp. 2d at 311.

However, other cases in this District have concluded, "while [the] violation of [HAMP

guidelines] may provide evidence of a duty otherwise owed, it does not create such a duty in the

first place."  Brown v. Bank of America Corp., No. 10-11085, 2011 WL 1311278, *4 (D. Mass.

Mar. 31, 2011) (emphasis in original), aff'd, No. 11-1363 (1st Cir. May 7, 2012); Markle, 844 F.

Supp. 2d 172, 185 (D. Mass. 2011); Provost v. Saxon Mortgage Servs., Inc., No. 11-40137-TSH,

2012 WL 1065481, *3 (D. Mass. Mar. 27, 2012); Kirtz v. Wells Fargo Bank N.A., No. 12-

10690-DJC, 2012 WL 5989705, *4 (D. Mass. Nov. 29, 2012).

This Court agrees with the latter cases and declines to recognize that HAMP creates a

new duty of care.  Accordingly, this Court finds that Ms. Whitt fails to state a claim for

negligence based only on Defendants' alleged breach of the HAMP guidelines.  Ms. Whitt's

allegation with respect to Defendants' alleged failure to maintain proper and accurate loan records does not save her claim.  She alleges no facts indicating that Defendants' records were improper or inaccurate in any way.

Accordingly, this Court recommends that Count III be dismissed against the Defendants.

>    4.    *Chapter 93A*

Ms. Whitt contends in Count VI that the Defendants engaged in unfair or deceptive business practices in violation of Chapter 93A by failing to comply with HAMP and foreclosing on the property without legal authority.  Compl. ¶ 52.  For this claim as well, Defendants argue that HAMP confers no private right of action and that Ms. Whitt should not be able to end-run this limitation with a Chapter 93A claim.  Def. Mem. at 10-11.

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. ch. 93A, § 2(a).  A successful claim under Chapter 93A requires a showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the defendant's deceptive act or practice and the consumer's injury.  Casavant v. Norwegian Cruise Line, Ltd., 76 Mass. App. Ct. 73, 76 (2009), aff'd, 460 Mass. 500, 952 N.E.2d 908 (2011) (citing M.G.L. c. 93A, § 9); Hershenow v. Enterprise Rent–A–Car Co. of Bos., Inc., 445 Mass. 790, 797 (2006).  "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'" Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (citation omitted).  "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a Chapter 93A violation is a question of law." Id. at 54 (quoting Ahern v. Scholz, 85 F.3d 774, 797 (1st Cir. 1996)).

A violation "of a federal regulation or statute such as HAMP is neither sufficient nor necessary to establish a Chapter 93A claim." Kirtz, 2012 WL 5989705, at *12 (citation omitted). Therefore, courts in this District have focused on whether the alleged activity would be independently actionable under Chapter 93A as unfair and deceptive. See Okoye v. Bank of New York Mellon, No. 10-11563-DPW, 2011 WL 3269686, *8 (D. Mass. July 28, 2011). Under these circumstances, courts have engaged in a three part inquiry: "(1) have plaintiffs adequately plead that defendant violated HAMP; (2) are those violations of the type that would be independently actionable conduct under 93A even absent the violation of a statutory provision (i.e. are the violations unfair or deceptive); and (3) if the conduct is actionable, is recovery pursuant to chapter 93A compatible with the 'objectives and enforcement mechanisms' of HAMP." Id. at *8 (citing Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 263 (D. Mass. 2011)). Each of these three requirements must be adequately plead for a Chapter 93A action to survive a motion to dismiss. Alvarez v. United States Bank N.A., No. 11-12324, 2012 U.S. Dist. LEXIS 86678, *11 (D. Mass. June 22, 2012). Failure to grant or modify a HAMP loan, without more, is not a per se Chapter 93A violation. Okoye, 2011 WL 3269686, at *7; see also Markle, 844 F. Supp. 2d at 186.

Indeed, complaints that have survived a motion to dismiss on such grounds have "alleged a pattern of misrepresentations, failure to correct detrimental errors, and/or dilatory conduct on the part of the servicer and/or bank that the courts have found could amount to unfair or deceptive practices" or have involved a "servicer's alleged representation that compliance with the [Trial Period Plan] would lead to permanent modification, which thereby induced the homeowners to continue payments when the servicer never intended to modify the loan." Okoye, 2011 WL 3269686, at *9 (collecting cases); see also Kirtz, 2012 WL 5989705, at *12-13

(denying motion to dismiss Chapter 93A claim where plaintiff alleged that her HAMP modification application was pending without advancement for over a year and that defendant foreclosed on her property during the application's pendency).  None of these factors are present here.  Thus, Ms. Whitt has stated no basis for finding that Defendants' actions were independently actionable outside of their alleged failure to comply with the relevant HAMP guidelines.

Ms. Whitt's foreclosure-based allegation is similarly deficient.  A mere violation of state common or statutory law is not sufficient to state a claim under Chapter 93A.  Massachusetts Eye & Ear, 552 F.3d at 69.

Accordingly, this Court recommends that Count VI be dismissed against the Defendants.

E.      Foreclosure Claims

Ms. Whitt alleges that Wells Fargo's foreclosure of the property was improper under the Uniform Commercial Code (Count IV) and Massachusetts statutory and common law (Count V) because Wells Fargo did not present proof that it was the proper holder of the note.  Compl. ¶¶ 43, 47.  Defendants move to dismiss on grounds that, prior to June 22, 2012, mortgagees did not need to hold the promissory note in order to foreclose.  Def. Mem. at 5.

1.      *Propriety of Foreclosing Without Holding the Note*

Defendants rely chiefly on the recent Massachusetts Supreme Judicial Court decision in Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569 (2012).  In Eaton, the SJC "resolved the debate of whether the foreclosing entity must hold the note in order to foreclose as a matter of law." Kirtz, 2012 WL 5989705, at *11.  The SJC held that the foreclosure sale must be conducted by the note holder or by one who acts as an authorized agent of the note holder.  Id. (citing Eaton, 462 Mass. at 584).  The SJC's decision, however, was limited to "apply only to mortgage

foreclosure sales for which the mandatory notice of sale has been given after the date of this opinion [June 22, 2012].  Eaton, 462 Mass. at 571.  Here, Ms. Whitt alleges that Wells Fargo initiated foreclosure proceedings on June 15, 2011, nearly a year before Eaton.  Thus, Ms. Whitt fails to state a claim for wrongful foreclosure arising from Wells Fargo's failure to hold the note.[19]

> ### 2.   *Wrongful Foreclosure Under the U.C.C.*

Under Article 3 of the Uniform Commercial Code, a "person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or subsection (d) of Section 3-418.  M.G.L ch. 106, § 3-301.  In turn, an instrument is "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order" that meets other criteria.  M.G.L. c. 106, § 3-104.  When presented with this statutory language, the Eaton court explained, "[w]e perceive nothing in the UCC inconsistent with our view that in order to effect a valid foreclosure, a mortgagee must either hold the note [the negotiable instrument] or act on behalf of the note holder."  Eaton, 462 Mass. at 586 n. 26.  To hold that Wells Fargo's pre-June 22, 2012 foreclosure was unlawful solely on the basis that it did not hold the note would ignore Eaton's directive on this point.  Accordingly, Eaton forecloses this argument as well.

---

[19] The power of sale may only be exercised if the foreclosing entity is the "assignee[ ] of the mortgage[ ] at the time of the notice of sale and the subsequent foreclosure sale."  Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 278 (1st Cir. 2013) (quoting U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 648 (2011)).  Ms. Whitt concedes in her complaint that MERS assigned the mortgage to Wells Fargo prior to the Wells Fargo's initiation of the foreclosure sale.  Compl. ¶¶ 13, 23.

3.      *Notice of Right to Cure*

In her brief, Ms. Whitt contends that where the notice of right to cure names the incorrect

mortgagee, the notice is defective and the foreclosure is void.  Pl. Opp. at 8 (citing Bravo-

Buenrostro v. OneWest Bank, F.S.B. et al., No. 11-03961, 2011 WL 10818677, at *6 (Mass.

Super. May 31, 2011)).

"One who sells under a power of [sale] must follow strictly its terms."  Ibanez, 458 Mass.

at 650–51, 941 N.E.2d 40.  The law is currently unclear on whether the notice of right to cure in

M.G.L. ch. 244, § 35A is part of the Massachusetts "power of sale," and thus must be complied

with strictly.  Compare Courtney v. U.S. Bank Nat'l Ass'n, No. 12-12181-NMG, 2013 WL

452941, *2 (D. Mass. Feb. 6, 2013) (finding a notice of default effective although it identified

the original lender incorrectly) appeal docketed No. 13-1694 (1st Cir. May 22, 2013) and Payne

v. U.S. Bank Nat'l Ass'n, No. 11-10786-GAO, 2013 WL 1282235, *1 (D. Mass. Mar. 28, 2013)

(finding substantial compliance with the requirements of Section 35A sufficient) with Ross v.

Deutsche Bank Nat'l Trust Co., No. 12-10586-WGY, 2013 WL 1225621, *6 (D. Mass. Mar. 27,

2013) (stating that "[b]ecause the notice requirement is part of the Massachusetts statutory

scheme regulating foreclosure, mortgagees seeking to foreclose must comply strictly with the

notice requirement.").  This is an unsettled area of law, which Massachusetts courts may soon

clarify.  See, e.g., U.S. Bank Nat'l Ass'n v. Schumacher, No. 2012-P-0990 (Mass. App. Ct. filed

June 19, 2012).

This Court need not resolve this question at this time.  There is no claim in Ms. Whitt's

actual complaint challenging the notice of right to cure as deficient.  See Compl. ¶¶ 44-50.  It

only appears in her brief in opposition to Defendants' motion to dismiss.  Pl. Opp. at 8.  Ms.

Whitt therefore fails to plead a claim for wrongful foreclosure arising from the August 2010 notice.

At oral argument, Ms. Whitt suggested that she may file leave to amend her complaint in order to assert a claim under Section 35A. She has not filed leave to amend at this time, so that issue is not presently before this Court.[20]

F.    MERS

Defendants move to dismiss MERS as a defendant in this case on the independent grounds that there are no allegations pled against MERS. Defendants note correctly that MERS is not alleged to have had any involvement in the servicing of the mortgage or in the foreclosure process. Def. Mem. at 11. MERS is only alleged to have assigned the mortgage to Wells Fargo. Compl. ¶ 13. Ms. Whitt has not provided any argument against Defendants' position.

Accordingly, the undersigned recommends that the District Court dismiss MERS for this reason as well.

## V.    CONCLUSION

For the reasons stated above, this Court recommends that the District Court DENY Ms. Whitt's motion to remand and GRANT Defendants' motion to dismiss the complaint in its current form.

## VI.    REVIEW BY A DISTRICT COURT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report

---

[20] Ms. Whitt has presented the Court with a notice of right to cure that names Wells Fargo as a mortgagee months before MERS assigned the mortgage to Wells Fargo. See Docket No. 28. If Ms. Whitt does file a motion for leave to amend the complaint, she may be able to plead an actionable claim on this basis.

and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  <u>See</u> Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  <u>See</u> <u>Phinney v. Wentworth Douglas Hospital</u>,199 F.3d 1 (1st Cir. 1999); <u>Sunview Condo. Ass'n v. Flexel Int'l</u>, 116 F.3d 962 (1st Cir. 1997); <u>Pagano v. Frank</u>, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal\
JENNIFER C. BOAL\
United States Magistrate Judge
